O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DON W. TRUJILLO, | ) | NO. EDCV 06-827-CT |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

SUMMARY OF PROCEEDINGS

On August 15, 2006, plaintiff, Don W. Trujillo ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). The parties filed a consent to proceed before the magistrate judge. On November 13, 2006, plaintiff filed a brief in support of the complaint. On December 12, 2006, the Commissioner filed a brief in opposition to plaintiff's request for relief.

1                    SUMMARY OF ADMINISTRATIVE RECORD

2          1.   Proceedings

3        On April 30, 2002, plaintiff filed an application for Supplemental

4   Security Income ("SSI"), alleging disability since 1995 due to severe

5   depression, hearing voices with visions, anxiety and left leg muscle

6   wasting. (TR 76, 77-79, 85).[1] The application was denied initially and

7   upon reconsideration. (TR 37, 42).

8        On December 11, 2002, plaintiff filed a request for a hearing

9   before an administrative law judge ("ALJ"). (TR 49). On October 15,

10  2003, plaintiff, represented by an attorney, appeared and testified

11  before an ALJ. (TR 251-267). On November 6, 2003, the ALJ issued a

12  decision that plaintiff was not disabled, as defined by the Act, and

13  thus was not eligible for benefits. (TR 29-36). Plaintiff filed a

14  request with the Social Security Appeals Council to review the ALJ's

15  decision and on August 27, 2004 the Appeals Council remanded the case to

16  the ALJ ordering the ALJ on remand to (1) consider evidence from the San

17  Bernardino County Department of Behavioral Health for the period from

18  May 2003 to June 2003 and (2) further evaluate plaintiff's subjective

19  complaints and consider the statement of plaintiff's sister. (TR 63-64).

20       On January 13, 2006, plaintiff, represented by an attorney,

21  appeared and again testified before an ALJ. (TR 268-287). The ALJ also

22  considered vocational expert ("VE") testimony. On March 29, 2006, the

23  ALJ issued a decision that plaintiff was able to perform a range of

24  light work limited to simple, routine, repetitive tasks and that, given

25

26       [1]    "TR" refers to the transcript of the record of
    administrative proceedings in this case and will be followed by
27  the relevant page number(s) of the transcript.

28                                    2

1   this functional capacity, plaintiff could perform jobs that existed in

2   significant numbers in the economy.   (TR 16).   Accordingly, the ALJ

3   found that plaintiff was not disabled, as defined by the Act, and thus

4   was not eligible for benefits.  (Id.)  On April 6, 2006, plaintiff filed

5   a request with the Social Security Appeals Council to review the ALJ's

6   decision.  (TR 8).  On June 29, 2006, the request was denied.  (TR 5-7).

7   Accordingly, the ALJ's decision stands as the final decision of the

8   Commissioner.   Plaintiff subsequently sought judicial review in this

9   court.

10          2.   Summary Of The Evidence

11       The ALJ's March 29, 2006 decision (TR 12-17) and the prior November

12   6, 2003 decision (TR 29-36) incorporated therein, except as otherwise

13   noted, materially summarize the evidence in the case.

14                      PLAINTIFF'S CONTENTIONS

15       Plaintiff contends as follows:

16   1.   The  ALJ  failed  to  properly  consider  the  opinions  of  the

17        consultative psychiatric examiner, Dr. Divy Kikani;

18   2.   The ALJ failed to pose a complete hypothetical to the VE;

19   3.   The  ALJ  failed  to  comply  with  the  remand  order  of  the  Appeals

20        Council by not properly considering the lay witness testimony; and,

21   4.   The ALJ incorrectly asserted that plaintiff's failure to obtain

22        treatment suggests that his impairments are not severe.

23                      STANDARD OF REVIEW

24       Under  42 U.S.C. §405(g),  this court reviews the Commissioner's

25   decision to determine if: (1) the Commissioner's findings are supported

26   by substantial evidence; and, (2) the Commissioner used proper legal

27   standards.   Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).

28

3

1  Substantial evidence means "more than a mere scintilla," <u>Richardson v.</u>

2  <u>Perales</u>, 402 U.S. 389, 401 (1971), but less than a preponderance.

3  <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).

4      When the evidence can reasonably support either affirming or

5  reversing the Commissioner's conclusion, however, the Court may not

6  substitute its judgment for that of the Commissioner.   <u>Flaten v.</u>

7  <u>Secretary of Health and Human Services</u>, 44 F.3d 1453, 1457 (9th Cir.

8  1995).   The court has the authority to affirm, modify, or reverse the

9  Commissioner's decision "with or without remanding the cause for

10  rehearing."   42 U.S.C. §405(g).

11                            <u>DISCUSSION</u>

12      1.   <u>The Sequential Evaluation</u>

13      A person is "disabled" for the purpose of receiving social security

14  benefits if he or she is unable to "engage in any substantial gainful

15  activity by reason of any medically determinable physical or mental

16  impairment which can be expected to result in death or which has lasted

17  or can be expected to last for a continuous period of not less than 12

18  months." 42 U.S.C. §423(d)(1)(A).

19      The Commissioner has established a five-step sequential evaluation

20  for determining whether a person is disabled.   First, it is determined

21  whether the person is engaged in "substantial gainful activity." If so,

22  benefits are denied.

23      Second, if the person is not so engaged, it is determined whether

24  the person has a medically severe impairment or combination of

25  impairments.   If the person does not have a severe impairment or

26  combination of impairments, benefits are denied.

27      Third, if the person has a severe impairment, it is determined

28                                  4

1  whether the impairment meets or equals one of a number of "listed

2  impairments." If the impairment meets or equals a "listed impairment,"

3  the person is conclusively presumed to be disabled.

4     Fourth, if the impairment does not meet or equal a "listed

5  impairment," it is determined whether the impairment prevents the person

6  from performing past relevant work.  If the person can perform past

7  relevant work, benefits are denied.

8     Fifth, if the person cannot perform past relevant work, the burden

9  shifts to the Commissioner to show that the person is able to perform

10  other kinds of work.  The person is entitled to benefits only if the

11  person is unable to perform other work.  20 C.F.R. §§404.1520, 416.920;

12  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

13     2.  Issues

14        A.  Consultative Examiner's Opinion

15     Plaintiff contends that the ALJ failed to properly consider the

16  opinions of Dr. Divy Kikani, who performed a psychiatric consultative

17  examination of plaintiff on June 10, 2002.

18     Dr. Kikani diagnosed plaintiff with a "mood disorder, not otherwise

19  specified" and gave a secondary diagnosis of "polysubstance abuse,

20  alcohol, marijuana and speed. Needs to be objectively verified."  (TR

21  181).  While Dr. Kikani gave plaintiff a "current" global assessment of

22  functioning ("GAF") score of 50 on the examination date, which indicates

23  severe, borderline moderate, symptoms,[2] Dr. Kikani found that plaintiff

24  showed only moderate impairment in social functioning, and mild to

25

26     [2] American Psychiatric Association, Diagnostic and

27  Statistical Manual of Mental Disorders p. 34 (4th ed., Text
   Revision, 2000 ("DSM-IV-TR")).

28

5

moderate impairment in daily activities of living, mild to moderate impairment in concentration, persistence and pace, mild to moderate impairment in ability to carry out complex instructions and moderate episodes of emotional deterioration at the normal work situation under customary work pressure. (TR 182). Dr. Kikani also assessed that plaintiff "would have no problem understanding and carrying out simple instructions." (Id.)

In his evaluation, Dr. Kikani noted that plaintiff claimed to have been sober for three years at the time of the evaluation, but that fact "needs to be objectively verified." (TR 180). Plaintiff's medical records indicate that petitioner, who has a 30 year history of abusing alcohol and heroin (TR 225), went to prison for possession and/or sales of narcotics sometime after he saw Dr. Kikani and was released from prison on May 1, 2003. (TR 226, 228; see also TR 243 reporting to Dr. Linda Smith in October of 2005 that he had been arrested eight times for possession of narcotics, robbery and possession of a firearm and went to prison once and was released from prison "about three years ago"). Plaintiff testified that he still drinks alcohol. (TR 276, see also TR 242).

The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence, Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,600(9th Cir. 1999)(citation omitted). Where medical reports are inconclusive,

1   "'questions of credibility and resolution of conflicts in the testimony

2   are functions solely of the Secretary.'" <u>Id</u>. (citation omitted).

3       While the ALJ did not specifically discuss Dr. Kikani's opinions in

4   his March 29, 2003 decision, he considered all the record evidence,

5   including Dr. Kikani's report, and incorporated by reference the prior

6   November 6, 2003 hearing decision. (TR 13). In that decision, the ALJ

7   summarized Dr. Kikani's opinions and adopted a residual functional

8   capacity generally consistent with those opinions, limiting plaintiff to

9   unskilled work with no frequent public contact. (TR 30,34-35). The ALJ

10   found that plaintiff had only mild to moderate difficulties in social

11   functioning based on the fact that he appears to have no difficulties

12   getting along with his sister and mother. (TR 32). Also significant

13   was the fact that plaintiff's medical records did not include evidence

14   of any episode of decompensation or deterioration of an extended period.

15   (TR 33). These findings are supported by the record.

16       In the current decision, the ALJ first noted "that the [plaintiff]

17   has been working for the past two years as an in home support service

18   worker" making about $700 per month. (TR 13). The ALJ also considered

19   plaintiff's treatment records and the evaluation by consultative

20   examiner Dr. Linda Smith, who gave plaintiff a mental status examination

21   on October 18, 2005. (TR 13-14, 239-247). Dr. Smith essentially opined

22   that plaintiff had no mental disorder other than substance abuse and

23   that he had no functional impairments. (TR 245-46). In evaluating

24   plaintiff, Dr. Smith reviewed Dr. Kikani's evaluation. (TR 239).

25   However, based on the results of her mental status examination of

26

27

28

plaintiff, she assessed plaintiff's current GAF score at 80,[3] which indicates no more than slight impairment in social, occupational or school functioning. (TR 245).  She also raised significant concerns about plaintiff's credibility and found plaintiff to be only partially credible. (TR 239-243).  In addition, Dr. Smith noted that plaintiff's reported daily activities include doing household chores, dressing and bathing himself, going to the store and taking a bus to get around. (TR 243).

Accordingly, based on all the evidence before him, including the evaluations by Dr. Kikani and Dr. Smith and plaintiff's medical records, the ALJ found that plaintiff's mental problems were due to substance abuse alone. (TR 13).  However, even considering the substance abuse, the ALJ found that plaintiff could perform basic work functions and limited plaintiff to simple, routine, repetitive tasks.[4]  (TR 14).  Thus, the ALJ's assessment of plaintiff's functional capacity is consistent with that of Dr. Kikani, who opined that plaintiff "would have no problem understanding and carrying out simple instructions." (TR 182).

---

[3]DSM-IV-TR at 34.

[4]"An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug abuse would (but for this paragraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).  Thus, where there is medical evidence of drug addiction or alcoholism, the ALJ must decide whether the plaintiff still would be disabled if the plaintiff stopped using drugs or alcohol.  See 20 C.F.R. § 416.935.  If so, the drug or alcohol abuse is not a contributing factor material to the disability and plaintiff is not entitled to benefits.  Id.  However, where, as here, the ALJ determines that, even considering the drug and alcohol use, the plaintiff is not disabled, then no analysis of the effects of drug addiction or alcoholism is required.  See 20 C.F.R. § 416.935(a)

Even assuming that Dr. Kikani's assessment that plaintiff had a "current" GAF of 50 indicates greater limitations, the ALJ gave specific and legitimate reasons for rejecting such limitations, namely, the plaintiff's demonstrated ability to perform substantial services in caring for his mother for the past few years **and getting paid by the State of California** to do so, and the findings and credibility observations of Dr. Smith, who reviewed Dr. Kikani's report. (TR 13-15). See Morgan v. Comm'r, 169 F.3d at 601-02 (ALJ properly discounted opinion of treating doctor where, among other things, plaintiff's daily activities contradicted the doctor's assessment of "marked" limitations and the doctor's opinion was contradicted by the testifying medical expert); see also Tonapetyan v. Halter, 242 F 3d 1144, 1149 (9th Cir. 2001)(where ALJ properly discounted plaintiff's credibility, ALJ was free to disregard doctor's report, which was based on plaintiff's self-reporting).

The ALJ's consideration of Dr. Kikani's opinions is supported by substantial evidence and free from material error.

B.   VE Hypothetical

Plaintiff also contends that in failing to comment upon Dr. Kikani's report, the ALJ failed to give the VE a complete hypothetical listing all plaintiff's limitations.

The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by the record. Accordingly, the ALJ's reliance on the testimony given by the VE in response to that hypothetical was proper. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). As discussed above, the ALJ's consideration of the opinions of Dr. Kikani was free from material error and supported

by substantial evidence.

Plaintiff further contends that the VE's testified that he was capable of performing jobs that, accordingly to the requirements for those jobs in the Dictionary of Occupational Titles ("DOT"), exceed plaintiff's assessed capabilities.

The DOT "'is not the sole source of admissible information concerning jobs.'" Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ "may take administrative notice of any reliable job information, including . . . the services of a vocational expert." Id. "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Id.

Here, the VE testified that, considering the limitations in the ALJ's hypothetical, which included the limitation to simple routine repetitive tasks and unskilled entry level work, there were in excess of ten thousand jobs available in the regional economy. (TR 285). The VE gave the following examples of available jobs that meet the criteria of the ALJ's hypothetical: "various types of assemblers . . . hand packagers, sorters and graders in the garment industry . . . primarily in manufacturing and bundlers in the garment industry." (Id.) The VE testified that these jobs could be learned by simple demonstrations within 30 days. (Id.)

Plaintiff cited a few examples of DOT descriptions for jobs from those categories that require a longer training period. However, many jobs in these categories require, as the VE testified, only a month's training period. See, e.g., DOT No. 706.687-010 (assembler, production (any industry)); 789.687-146 (remnant sorter(textile)); 920.587-018

1  (packager, hand (any industry)).

2      Plaintiff also notes that the DOT descriptions for many of those

3  jobs require a reasoning level of 2, which plaintiff contends is beyond

4  his assessed abilities.  A reasoning level of 2 requires the worker to

5  "apply commonsense understanding to carry out detailed but uninvolved

6  written or oral instructions" and "deal with problems with involving a

7  few concrete variables in or from standardized situations."  DOT,

8  Appendix C, Scale of General Education Development.  This is not

9  incompatible with simple, routine, repetitive work.  See Meissl v.

10  Barnhart, 403 F.Supp.2d 981, 984 (C.D. Cal. 2005)(plaintiff, whose RFC

11  limited her to simple tasks performed at a routine or repetitive pace,

12  was able to perform jobs listed in DOT with a reasoning level score of

13  2).

14      The ALJ's reliance on the VE's testimony is supported by

15  substantial evidence and free from material legal error.

16          C.  Lay Testimony

17      Plaintiff contends the ALJ erred, and failed to comply with the

18  directive of the Appeals Council's remand order, by failing to properly

19  consider the statements of plaintiff's sister.

20      In determining whether a plaintiff is disabled, an ALJ must

21  consider lay witness testimony concerning a claimant's ability to work.

22  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).

23  However, if the ALJ wishes to discount the testimony of a lay witness,

24  the ALJ need only give reasons germane the witness for discrediting it.

25  Bayliss v. Barnhart, 427 F.3d at 1217.

26      Here, the ALJ considered the unsworn statements and letter

27  submitted by plaintiff's sister. (TR 15).  The ALJ disregarded the

28

11

sister's statements for two reasons.  First, the ALJ found that plaintiff's sister "has an obvious family motive in obtaining public financial support for her brother." (Id.)  This is a reason germane to the witness and is an appropriate basis for discounting her testimony.  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)(ALJ did not err in rejecting lay testimony of plaintiff's former girlfriend in part due to her "close relationship" with plaintiff and that she was "probably influenced by her desire to help [him]").  In addition, the ALJ found that plaintiff's sister's allegations were unsupported by medical records establishing a residual functional capacity any less than that assessed by the ALJ.  (TR 15).  Inconsistency with the medical evidence is a proper basis for rejecting lay testimony.  Bayliss v. Barnhart, 427 F.3d at 1218.  Plaintiff's sister's statements that plaintiff's mental and physical impairments preclude him from working (TR 127-39, 169) are inconsistent with the medical evidence.  (See 182, 187, 245).

The ALJ's consideration of the testimony of plaintiff's sister is supported by substantial evidence and was not error.

D.   Treatment History

Finally, plaintiff contends that the ALJ erred in relying on the fact that plaintiff has "received very little treatment in the past few years, suggesting that his alleged impairments are not particularly severe," (TR 15), because plaintiff testified that he stopped going to a behavior center in Rialto for his mental health problems because he could not afford it.  (TR 279).

The Ninth Circuit has "proscribed the rejection of a [plaintiff's] complaints for lack of treatment when the record establishes that the [plaintiff] could not afford it." Regennitter v. Comm'r of Soc. Sec.

12

Admin., 166 F.3d 1294, 1297 (9th Cir. 1999).  Here, although plaintiff testified that he could not afford further treatment at the behavior center in Rialto, he also testified that he is receiving $700 a month for taking care of his mother.  (TR 273).  Moreover, the record does not indicate that he attempted to obtain any other treatment or that he sought out treatment previously.  Instead, plaintiff initially sought treatment because his attorney told him to go.  (TR 278).

In any event, in the statement quoted in plaintiff's brief, the ALJ was referring to plaintiff's minimal treatment for his physical conditions, not his mental impairment.  Plaintiff presented no evidence that he could not afford treatment for his physical conditions – he, in fact, did receive treatment.  (TR 170-78).  Moreover, the ALJ's residual functional capacity assessment was based on the medical evidence, including the consultative examiner's report and plaintiff's treatment records, not simply a lack of treatment.

Similarly, with respect to plaintiff's mental limitations, the ALJ based his assessment on the medical evidence of record, including the reports of the consultative examiners and plaintiff's treatment records. In considering the credibility of plaintiff's alleged limitations, the ALJ noted that plaintiff's current treatment was "non-existent," but also found that plaintiff was already performing substantial work on a regular basis as an in home service provider for his mother and that any alleged limitations in excess of those found by the ALJ were not supported by medical evidence.  (TR 15).

Accordingly, the ALJ did not materially err in referring to plaintiff's minimal treatment and the ALJ's decision is supported by substantial evidence.

1                                CONCLUSION

2        If the evidence can reasonably support either affirming or

3   reversing the Commissioner's conclusion, the court may not substitute

4   its judgment for that of the Commissioner.  <u>Flaten v. Secretary of</u>

5   <u>Health and Human Services</u>, 44 F.3d at 1457.

6        After careful consideration of the record as a whole, the

7   magistrate judge concludes that the Commissioner's decision is supported

8   by substantial evidence and is free from material legal error.

9   Accordingly, it is ordered that judgment be entered in favor of the

10  Commissioner.

11

12  DATED: December 21, 2006

13                          CAROLYN TURCHIN
                           _____
14                          CAROLYN TURCHIN
                           UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    14